Fred **WOODSON** and Hector DeJesus, Plaintiffs,

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRIC WORKERS LOCAL 292, et al., Defendants.**

**Civil No. 4–96–802 (DSD/JMM).**

United States District Court, D. Minnesota, Fourth Division.

Aug. 15, 1997.

Michael D. Hausfeld, Daniel A. Small, Cohen Milstein Hausfeld & Toll, Washington, DC, Howard J. Sedran, Levin Fishbein Sedran & Berman, Philadelphia, PA, Richard G. Day, Day & Associates, Brooklyn Park, MN, Daniel E. Gustafson, Kent M. Williams, Karla Marie Gluek, Heins Mills & Olson, Minneapolis, MN, for plaintiffs.

Connie Lynn Howard, Garber & Metcalf, Minneapolis, MN, for Intern. Broth. of Elec. Workers Local 292.

Mary Margaret O'Brien, Anna Lisa Merklin Lewis, Meagher & Geer, Minneapolis, MN, for Ben Franklin Elec., Inc.

Mary A. Rice, Jardine Logan & O'Brien, St. Paul, MN, for Franzier Morris Elec. Co.

David Randall Hols, Paul James Zech, Lee Andrew Lastovich, Felhaber Larson Fenlon & Vogt, Minneapolis, MN, for Premier Elec. Corp., Eagan McKay Elec. Co., Inc., Parsons Elec. Co., Collins Elec. Systems, Inc., Elec. Repair & Const. Co., Inc.

David Randall Hols, Paul James Zech, Lee Andrew Lastovich, Brad J. Miller, Felhaber Larson Fenlon & Vogt, Minneapolis, MN, for Sterling Technology Systems, Industrial-Electric Co., Bloomington Elec. Co.

### ORDER

DOTY, District Judge.

This matter is before the court on the motions of defendants Ben Franklin Electric, Inc., Fraser Morris Electric Company, Industrial Electric Company, and Sterling Technology Systems for summary judgment. Based on a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendants' motions.

### BACKGROUND

Plaintiff Fred Woodson ("Woodson") is African American and has been a member of the International Brotherhood of Electric Workers Local 292 ("the Union") since 1986. Plaintiff Hector DeJesus ("DeJesus") is Hispanic American and has been a member of the Union since 1973. Both plaintiffs are licensed in Minnesota as Journeyman Class A Electricians. Plaintiffs bring this action on their own behalf, and "on behalf of all others similarly situated," against the Union and contractors, including Ben Franklin Electric, Inc. ("Ben Franklin"), Fraser Morris Electric Company ("Fraser Morris"), Premier Electric Corporation, Eagan McKay Electric Company, Inc., Parsons Electric Company, Collins Electrical Systems, Inc., doing business as Collisys Electrical, ("Collins"), Sterling Technology Systems, Inc. ("Sterling Technology"), Electric Repair & Construction Co., Inc., and Industrial Electric Company ("Industrial"). Plaintiffs filed an amended complaint adding Bloomington Electric Company as a defendant and alleging a breach of the duty of fair representation against the Union. This action has not, however, been certified as a class action.

Plaintiffs Woodson and DeJesus bring this action against the defendants for damages and injunctive relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., 42 U.S.C. § 1981, and the Minnesota Human Rights Act, Minn.Stat. §§ 363.01, et seq., for discriminating against plaintiffs based on their race or national origin.

On February 17, 1996, DeJesus filed charges of discrimination with the EEOC and the Minnesota Department of Human Rights alleging that "[t]hrough a coordinated pattern of discriminatory practices, and overt and racially motivated illegal discriminatory acts, and with the full knowledge and acquiescence of his Union, Mr. DeJesus has been unable to obtain full time permanent employment since 1974." See e.g., Affidavit of Daniel E. Gustafson, Exh. 1. DeJesus received a "right to sue" letter from the EEOC dated May 17, 1996. Affidavit of Gustafson, Exh. 2. On November 2, 1994, Woodson filed a charge of discrimination with the EEOC and the Minnesota Department of Human Rights

alleging retaliation and discrimination against defendant Collins. On August 14, 1996, plaintiffs filed this action.

The plaintiffs, as members of the Union, are covered by a collective bargaining agreement ("Agreement") between the Union and the Minneapolis Chapter of the National Electrical Contractors Association ("NECA"). Defendants are members of the NECA. The Union maintains and operates a hiring hall, or register for employment. Under the Agreement, the Union is "the sole and exclusive source of referral of applicants for employment," and the employer has "the right to reject any applicant for employment." Agreement §§ 4.02 and 4.03. Plaintiffs challenge the referral and hiring procedure provided for in the Agreement between the Union and the contractor defendants. When a contractor contacts the Union requesting a Journeyman Electrician, Union members are referred to the Employer in order of their place on the "Out of Work Lists." Agreement § 4.14. Any applicant who is rejected by a contractor is returned to his place on the list and is referred to other employment. The Agreement also provides for a layoff, or reduction in force, procedure. Agreement § 4.21. Under a "two hour rule," if a Union member is sent back immediately after reporting to the work site, the contractor must pay the Union member for two hours of regular pay as if the worker had worked the two-hour shift. Plaintiffs argue that the procedure is used to systematically discriminate against minority members of the Union.

Plaintiffs also assert that minority Union members are subjected to a hostile work environment, that minority members are systematically not assigned to complex electrical work that requires access to blueprints and plans relating to commercial building projects, and that minority Union members are retaliated against for making complaints.

Fraser Morris moves for dismissal, or alternatively, for summary judgment in its favor because plaintiffs' Title VII claims are barred because plaintiffs failed to exhaust their administrative remedies, plaintiffs, section 1981 claims are barred by the applicable statute of limitations and are outside the applicable scope for viable claims, and plaintiffs' MHRA claims are barred for their failure to assert claims within the limitations period. Ben Franklin moves for summary judgment in its favor because plaintiffs' claims are barred by the applicable statute of limitations, and because plaintiffs' section 1981 claims do not constitute a valid cause of action under the statute. Sterling Technology moves for summary judgment because plaintiffs' claims are barred by the applicable statute of limitations, plaintiffs' section 1981 claims fail to state cognizable claims, and Woodson's Title VII claims are barred because he failed to exhaust his administrative remedies. Industrial moves for summary judgment because plaintiffs' claims are barred by the applicable statutes of limitations, plaintiffs failed to state a cognizable claim under 42 U.S.C. § 1981, Woodson's Title VII claims are barred because he failed to exhaust his administrative remedies, and Industrial is not subject to liability for the alleged conduct of its predecessor.

## DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when "the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material if its resolution affects the outcome of the case. There is a genuine issue of fact if the evidence is such that it could be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Judgment is granted for the moving party if, under the governing law, there can be but one reasonable conclusion as to a jury's verdict. *Id.*

On a motion for summary judgment, all evidence and inferences are viewed in a light most favorable to the nonmoving party. *Adickes v. Kress*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). Nevertheless, the nonmoving party may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts suffi-

cient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted for the defendant because a failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53.

In opposition to summary judgment, plaintiffs submitted an affidavit pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. Rule 56(f) Affidavit of Daniel E. Gustafson. Plaintiffs' counsel states that discovery is necessary and that "discovery will prove that defendants engaged in and maintained a systematic practice—based in part, on contractual provisions between the Union and the Contractors—of discrimination against minority Union members." *Id.* at ¶ 7. Furthermore, plaintiffs urge that they "need written answers to interrogatories from all defendants, to review documents responsive to plaintiffs' document requests and to take the depositions of Union representative and Contractor representatives regarding the policies and practices ... , including contract negotiations, referral policies, turnaround statistics, blacklisting, salary information, grievances retaliation, hostility toward minority electricians, and assignment policies." *Id.* at ¶ 8. Plaintiffs further state that they need discovery against Industrial regarding its purchase of its predecessor with respect to its notice of practices of discrimination and related matters. *Id.* at ¶ 9. Notwithstanding plaintiffs, Rule 56(f) affidavit, the court determines that plaintiffs' claims are ripe for summary judgment.

**B. Title VII Claims**

In order to pursue a claim of discrimination under Title VII, a plaintiff must exhaust his administrative remedies. 42 U.S.C. § 2000e–5(b)(c) and (e). " 'Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts.' " *Shannon v. Ford Motor Co.*, 72 F.3d 678, 684 (8th Cir.1996) (quoting *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir.1994)). Exhaustion requires that a timely charge of discrimination be filed with the EEOC. 42 U.S.C. § 2000e–5(e)(1) To be timely in Minnesota, a charge of discrimination must be filed with the EEOC within 300 days of the discriminatory act. *Id.* Thereafter, a plaintiff must commence suit within 90 days of receiving a "right-to-sue" letter from the EEOC. 42 U.S.C. § 2000e–5(f)(1). The subsequently filed suit will be limited to the claims in the timely filed charge of discrimination and any other claims that are "reasonably related" to the claims in the charge of discrimination. *Williams*, 21 F.3d at 222.

Fraser Morris's last contact with DeJesus was on July 30, 1991. Fraser Morris has not had any contact with DeJesus since that date. Woodson never worked for Fraser Morris. Fraser Morris never received a referral of Woodson from the Union, and Fraser Morris never rejected Woodson from employment.

Plaintiff Woodson worked for Ben Franklin in 1988 for six months during a rotating apprenticeship program. Woodson was hired on February 3, 1988, and left the company on August 19, 1988, when he was transferred to a different company. Woodson has not been referred to Ben Franklin by the Union since that time. Plaintiff DeJesus worked for Ben Franklin in 1984. DeJesus was hired on January 26, 1984, worked 40 hours, and was then laid off on February 1, 1984, in a reduction in force. DeJesus was recalled fifteen days later for another six days of work and was then laid off in a reduction in force. DeJesus was referred to Ben Franklin again on August 14, 1991. DeJesus was not accepted for employment.

DeJesus worked for Sterling Technology from April 7, 1981 to August 16, 1982; from May 31, 1983 to August 5, 1983; and from January 4, 1985 to January 22, 1985. On December 20, 1988, the Union referred DeJesus to Sterling, and Sterling "turned around," or refused to hire, DeJesus. On December 28, 1988, the Union again referred DeJesus to Sterling, and Sterling again refused to hire DeJesus. Sterling had no contact with DeJesus after the 1988 referrals. Woodson worked for Sterling from February 16, 1987 through August 21, 1987, and again

from June 1, 1990 through November 30, 1990. Since November 30, 1990, Woodson has not worked for Sterling and has not been referred to Sterling for work.

Industrial has never had any contact with Woodson in that Woodson has not been referred to Industrial and has not been "turned around," or rejected, by Industrial. DeJesus has not had any contact with Industrial since March 18, 1988. In March 1988, DeJesus accepted a "40–hour" call with Industrial. *See* Agreement § 4.13 (stating that applicant who is hired and received, through no fault of his own, work of forty hours or less, shall, upon registration, be restored to his placement). The work expired March 18, 1988, and DeJesus has not been referred to Industrial or worked for Industrial since that time.

Plaintiff DeJesus filed his EEOC charges on February 17, 1996. Accordingly, the statute of limitations cutoff period on his Title VII claim was 300 days prior to his filing of the charge, or April 23, 1995. Plaintiff Woodson only filed a charge against Collins. Plaintiffs DeJesus and Woodson failed to comply with the limitations period and exhaustion requirements to bring their Title VII claims against these defendants.

██ Plaintiffs assert that the statute of limitations was tolled because they have alleged a continuing violation in that the Union and contractors continue to engage in a systematic pattern of discrimination against minority Union members which has resulted from the maintenance of a system of discrimination. A plaintiff making a claim of discrimination may challenge incidents which happened outside the statutory time limitations if the various incidents or acts of discrimination constitute a continuing pattern of discrimination. *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1271 (8th Cir.1990); *Satz v. ITT Fin. Corp.*, 619 F.2d 738, 743 (8th Cir. 1980). "Under the continuing violation theory there must be at least one instance of discrimination within the filing period, and the earlier acts must be part of continuing policy or practice that includes acts within the filing period." *Jenkins v. Wal–Mart Stores., Inc.*, 910 F.Supp. 1399, 1413–14 (N.D.Iowa 1995) As recognized by other courts, however:

[A] violation is not "continuing" merely because the effects of an allegedly discriminatory action are present during the statutory period. *Chaffin*, 904 F.2d at 1272. Rather, in Title VII cases, the critical question is whether "any present violation exists" during the statutory period. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) (emphasis supplied). Accordingly, to rely on the continuing violation theory, a plaintiff must show a "series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the limitations period." *Glass v. IDS Finan. Servc., Inc.*, 778 F.Supp. 1029, 1052 (D.Minn.1991) (quoting Barbara Lindemann Schlei & Paul Grossman, Employment Discrimination Law, 232 (Supp. 1979)).

*Jenson v. Eveleth Taconite Co.*, 824 F.Supp. 847, 877 (D.Minn.1993). Although plaintiffs assert the continuing violation is the maintenance of a discriminatory system as opposed to a series of related acts, plaintiffs challenge facially neutral, as opposed to facially discriminatory, policies. "When a plaintiff challenges a facially neutral policy or practice, [he] is essentially challenging the current impact, on [him]self and others similarly situated, of a policy previously adopted by the company. The basic complaint, then, is about the current effects of a past discriminatory act (the institution of the policy or practice) and, as a result, the continuing violation doctrine does not apply." *Sondel v. Northwest Airlines, Inc.*, Civil No. 3–92–381, 1993 WL 559028 (D. Minn. Jan. 14, 1993) (citing *Lorance v. AT & T Technologies, Inc.*, 490 U.S. 900, 908, 109 S.Ct. 2261, 2267, 104 L.Ed.2d 961 (1989) (overruled by the 1991 Civil Rights Act on other grounds)). In this case, because plaintiffs are challenging the failure of defendants to hire them under the facially neutral policies, the court determines that the continuing violation theory does not apply to plaintiffs' claims against these defendants.

### C. MHRA Claims

The Minnesota Human Rights Act requires that:

A claim of an unfair discriminatory practice must be brought as a civil action pursuant to § 363.14, subdivision 1, clause (a), filed in a charge with a local commission pursuant to § 363.116, or filed in a charge with the commissioner within one year after the occurrence of the practice.

Minn.Stat. § 363.06, subd. 3. The act further provides that:

> For purposes of subdivision 3, the first application of an unfair discriminatory practice, employment policy, or seniority system to a new person establishes a basis for the filing of a claim by that person.

Minn.Stat. § 363.06, subd. 3a. Because there is no recognizable continuing violation in this case and because plaintiffs did not file their claims within the one-year time frame, plaintiffs' MHRA claims are barred by the limitations period.

## D. Section 1981 Claims

Woodson and DeJesus also assert claims under 42 U.S.C. § 1981. Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, ... and to full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens....

42 U.S.C. § 1981. Defendants assert that Woodson and DeJesus failed to satisfy the applicable statute of limitations for their section 1981 claims and that their claims are not viable, even if their claims satisfy the statute of limitations.

Section 1981 does not include a statute of limitations period. Courts have been instructed to apply the most appropriate or analogous state statute of limitations. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660, 107 S.Ct. 2617, 2620, 96 L.Ed.2d 572 (1987) (citing *Wilson v. Garcia*, 471 U.S. 261, 266–268, 105 S.Ct. 1938, 1941–43, 85 L.Ed.2d 254 (1985)). In *Wilson*, the Supreme Court determined that suits brought under section 1983 ought to borrow the limitations period provided by the state statute of limitations for personal injury actions. *Wilson*, 471 U.S. at 276–80, 105 S.Ct. at 1947–49. The Supreme Court analyzed the history and broad purpose of section 1983 and determined that the federal interest in "uniformity, certainty, and the minimization of unnecessary litigation" supported the "simple approach" adopted by the Supreme Court. *Wilson*, 471 U.S. at 275, 105 S.Ct. at 1946–47. In *Goodman*, the Supreme Court extended the rationale of *Wilson* to section 1981 claims, and determined that a state's personal injury statute of limitations ought to apply to section 1981 claims. *Goodman*, 482 U.S. at 660–62, 107 S.Ct. at 2620–22. In *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), the Court further clarified the rule pronounced in *Wilson* by concluding that when state law provides multiple statutes of limitations for personal injury actions, the general or residual personal injury statute governs section 1983 claims.

Defendants assert that Minnesota's two-year statute of limitations for personal injury torts should apply to plaintiffs' claims, rather than the state's residual statute for personal injury torts, which provides a six-year period of limitations. See Minn. Stat. §§ 541.07(1) [1]; 541.05, subd. 1(5).[2] Defendants rely on *Rhodes v. Northwestern Bell Tel. Co.*, 709 F.Supp. 162 (D.Minn.1987), and *Rice v. Target Stores, Division of Dayton*

---

1. Section 541.07(1) provides:

   Except where the uniform commercial code or this section otherwise prescribes, the following actions shall be commenced within two years:
   . . .
   (1) For libel, slander, assault, battery, false imprisonment, or other tort, resulting in personal injury, and all actions against physicians, surgeons, dentists, other health care professionals as defined in section 145.61, and veterinarians as defined in chapter 156, hospitals, sanatoriums, for malpractice, error, mistake or failure to cure, whether based on contract or tort....

   Minn.Stat. § 541.07(1).

2. Section 541.05, subd. 1(5) provides:

   Except where the uniform commercial code otherwise prescribes, the following actions shall be commenced within six years:
   . . .
   (5) For criminal conversation, or for any other injury to the person or rights of another, not arising on contract, and not hereinafter enumerated[.]

   Minn.Stat. § 541.05, subd.1(5).

*Hudson Corp.*, 677 F.Supp. 608 (D.Minn. 1988), to support their position. Both the *Rhodes* and *Rice* decisions cited to the Supreme Court's decision in *Goodman* and recognized that Minnesota's personal injury limitations period governed section 1981 actions. *See Rhodes*, 709 F.Supp. at 163; *Rice*, 677 F.Supp. at 612. In *Rhodes*, the court acknowledged that the courts of this district had applied the two-year statute of limitations for section 1983 claims following the Supreme Court's decision in *Wilson. See Cook v. City of Minneapolis*, 617 F.Supp. 461, 463–65 (D.Minn.1985) (citing *Wilson* and selecting the two-year as opposed to six-year limitations period for § 1983 claims). The parties in *Rhodes* then agreed that the same limitations period applied in the section 1981 context. Defendants urge this court to continue applying Minnesota's two-year statute of limitations to section 1981 claims.

In considering this issue, however, the court determines that the courts in *Rice* and *Rhodes* were applying the two-year statute of limitations to the plaintiffs' 1981 claims because that was the limitation period used in 1983 actions at the time of those decisions. *Owens* and subsequent court decisions support the position that this court should apply the six-year statute of limitations period to the section 1981 claim. *See Owens*, 488 U.S. at 243, 109 S.Ct. at 578 (recognizing federal policy in favor of ease and predictability when applying the appropriate personal injury limitations statute and selecting the general or residual personal injury statute for section 1983 claims); *Egerdahl v. Hibbing Community College*, 72 F.3d 615 (8th Cir. 1995) (analogizing section 1983 claims and section 1981 claims with claims brought under Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972, and recognizing that in Minnesota, section 1983 claims are governed by the six-year limitations period); *see also Berg v. Groschen*, 437 N.W.2d 75, 76–77 (Minn.Ct. App.1989) (recognizing that *Owens* clarified *Wilson*, and designating the six-year limitations period in section 541.05, subd. 1(5) as the applicable limitations period for section 1983 claims). Although *Owens* only speaks to section 1983 actions, the teaching of Goodman implies that the same statute of limitations should apply to section 1981 actions.

The court believes that this determination is consistent with the analysis applied in earlier decisions of this district. *See, e.g., Rhodes*, 709 F.Supp. at 163. Further, the principles pronounced in *Wilson, Goodman,* and *Owens*, which favor certainty and uniformity, are fostered by the application of the residual personal injury statute of limitations to section 1981 claims, as well as to section 1983 claims. Thus, plaintiffs' section 1981 claims are governed by the six-year statute of limitations. See Minn.Stat. § 541.05, subd. 1(5).

Applying the six-year statute of limitations period to plaintiffs' section 1981 claims since the continuing violation theory is not applicable as already discussed, the court concludes that DeJesus' claims against Sterling and Industrial are untimely, and that Woodson's claims against Fraser Morris, Ben Franklin, and Industrial are also untimely.

■ With respect to the remaining section 1981 claims, the court must consider whether they are viable. In *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court held that section 1981 "does not apply to conduct that occurs after the formation of a contract and which, does not interfere with a right to enforce established contract obligations." 491 U.S. at 171, 109 S.Ct. at 2369. The Civil Rights Act of 1991, effective November 21, 1991, overruled *Patterson* and expanded the coverage of section 1981 to embrace all phases and incidents of a contractual relationship by adding section 1981(b). *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994); *Winbush v. State of Iowa*, 66 F.3d 1471 (8th Cir.1995). The Supreme Court has held, however, that this amendment does not apply retroactively. *Rivers*, 511 U.S. at 307–11, 114 S.Ct. at 1517–18. Thus, plaintiffs' claims allegedly occurring prior to November 21, 1991, which include all of plaintiffs' remaining claims, are not actionable under section 1981 unless they allege discrimination in contract formation or in the right to enforce the contract.

In this case, the plaintiffs' claims do not pertain to the making or enforcement of a contract between the plaintiffs and Fraser Morris, Ben Franklin, or Sterling. Thus,

plaintiffs' remaining claims against Fraser Morris, Ben Franklin, and Sterling are dismissed as outside of the scope of viable section 1981 claims prior to November 21, 1991.

### CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Defendant Fraser Morris's motion to dismiss, or alternatively, for summary judgment is granted (Doc. No. 30);
2. Defendant Ben Franklin's motion for summary judgment is granted (Doc. No. 38);
3. Defendant Sterling Technology's motion for summary judgment is granted (Doc. No. 47);
4. Defendant Industrial's motion for summary judgment is granted (Doc. No. 51);
5. Plaintiffs' actions against Fraser Morris, Ben Franklin, Sterling Technology, and Industrial Electric are dismissed with prejudice.